1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JUANITA MORALES,                        Case No. 09-cv-01073-JLT

12        Plaintiff,                         ORDER REGARDING PLAINTIFF'S
                                             SOCIAL SECURITY COMPLAINT
13        v.
                                             ORDER DIRECTING THE ENTRY OF
14                                           JUDGMENT FOR DEFENDANT MICHAEL J.
     MICHAEL J. ASTRUE,                      ASTRUE, COMMISSIONER OF SOCIAL
15   Commissioner of Social Security,        SECURITY, AND AGAINST PLAINTIFF
                                             JUANITA MORALES
16        Defendants.
                                    /
17

18                              **BACKGROUND**

19        Juanita Morales ("Plaintiff") seeks judicial review of an administrative decision denying her

20   claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act

21   (the "Act").

22                    **FACTS AND PRIOR PROCEEDINGS**[1]

23        Plaintiff filed an application for SSI benefits on August 11, 2003.  AR at 14.  This claim was

24   denied, and Plaintiff timely filed a request for a hearing.  Id.  A hearing was held on February 7,

25   2006.  Id.  The ALJ concluded Plaintiff was not disabled and denied benefits on February 24, 2006.

26   Id. at 21.  The Appeals Council denied Plaintiff's request for review on April 19, 2006.  Id. at 4.

27   _____

28        [1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

                                          1

1   Thus, the ALJ's decision became the decision of the Commissioner.

2          On June 16, 2006, Plaintiff sought review of the decision in the United States District Court,

3   Eastern District of California, in case number 1:06-cv-00813. On August 20, 2007, the Court issued

4   a judgment in favor of Plaintiff, and remanded the claim "for a determination as to whether

5   [Plaintiff] can perform substantial gainful employment, through the proper questioning of a

6   vocational expert or the utilization of the Medical-Vocational Guidelines." Id. at 274.  The Appeals

7   Council remanded the claim on June 23, 2008.  Id. at 275.

8          While the case was pending judgment from the District Court, Plaintiff filed another

9   application for SSI benefits on March 31, 2007.  AR at 250.  A new hearing was held on October 21,

10  2008.  Id.  The ALJ found that the remand order rendered the second application a duplicate, and

11  therefore "consolidated the evidence contained in both files and issued a decision covering the entire

12  period."  Id.  The ALJ concluded Plaintiff was not disabled within the meaning of the Act and denied

13  benefits on November 26, 2008.  Id. at 259.  The Appeals Council denied Plaintiff's request for

14  review on April 24, 2009.  Id. at 240.  Therefore, the ALJ's decision became the decision of the

15  Commissioner.

16         Hearing Testimony

17         Three individuals testified at the hearing before the ALJ on October 21, 2008:  Plaintiff;

18  Sandra Morales, Plaintiff's daughter; and Vocational Expert ("VE") Linda Ferra.  AR at 304, 322-

19  23.

20         Plaintiff testified that she was 47 years old and born on April 12, 1961.  AR at 307.

21  According to Plaintiff, she completed the ninth grade, in "regular" classes and not special education.

22  Id.  Plaintiff testified that she had not worked since 1997, and at that time, she was seasonally

23  employed as a grape picker.  Id. at 308.  Plaintiff stated she could not remember whether the only job

24  she had since 1993 was picking grapes.  Id.  When asked why she cannot work, Plaintiff responded

25  that she had problems with "focusing and comprehension."  Id.

26         Plaintiff used drugs and alcohol in the past, but reported that she had been clean and sober for

27  "three years and three months" at the time of the hearing.  AR at 308.  However, the ALJ questioned

28  Plaintiff regarding this statement, because medical records dated April 16, 2007, mentioned drug

2

consumption. Id. at 309.  Plaintiff stated that she had no response to that, but that she had not tested dirty at any time and now lived in a sober living home. Id. at 309-10.  Methamphetamine was Plaintiff's drug of choice, and she drank vodka and tequila. Id. at 308-09.  She testified that she had been in jail for charges related to the methamphetamine, but Plaintiff was unable to recall the number of times she was incarcerated. Id. at 309.

With regard to medical conditions, Plaintiff stated that she had Hepatitis C, mental problems, liver damage, and bunions on her feet. AR at 311.  Plaintiff reported that she had trouble with her back, which "hurts all the time," and her neck because she stated that she had "deterioration in 5, 6, and 7 of the neck bump and it causes a lot of pain." Id. at 312.  Plaintiff indicated that she suffered from migraine headaches "three or four times a week" that last for hours. Id.  On a scale of 1 to 10, with 10 being "pass out pain," Plaintiff stated her pain was about an 8, but that she didn't take pain medication because it causesdside effects such as "nausea, vomiting, tiredness, [and] weakness." Id. at 313.  Plaintiff's said that her hands and feet sometimes got numb and she could not feel them. Id. at 315.

Plaintiff testified that Dr. Farrah Kahn, whom Plaintiff saw every month, said Plaintiff had a schizoaffective disorder, bipolar type, which caused her to become happy and sad (AR at 313) and "panic disorder with agoraphobia." Id. at 316.  Plaintiff asserted that she hated to go outside. Id. at 311.  She reported that she was "scared of being around a lot of people," and did not go to church, the movies, or visit friends "as much as [she] would like." Id. at 315.  She said that when she had a panic attack from going outside, she would "start to hyperventilate and start to sweat." Id. at 316.  Plaintiff testified she had post-traumatic stress disorder as a result of sexual abuse and being beaten and raped. Id.  In addition, Plaintiff stated she had trouble with memory and was unable to concentrate for two hours at a time. AR at 317.  She reported that she had been suicidal and attempted suicide once, "years ago." Id.  She stated that she felt worthless and heard voices telling her that she was worthless. Id.  Plaintiff indicated that she thought people were mad at her, and she had crying spells. Id. at 318.  She reported that she took medication for her mental health, and found them to be "a little bit" helpful. AR at 320.

3

1    Plaintiff stated that she lay down "[b]asically, all day," and sometimes she would elevate her

2  legs. AR at 313.  She said that a normal day involved her watching television.  Id. at 314.  Plaintiff

3  testified that she took on as many responsibilities as she could, such as cleaning and doing

4  housework, but generally she did not "have the strength to do them."  Id. at 310-11.  She said that she

5  did not vacuum, wash dishes, mop the floors, or do grocery shopping.  Id. at 314.  However, Plaintiff

6  said she did her own laundry, sometimes made the beds, and cooked for herself "very little."  Id.

7    The heaviest thing Plaintiff thought that she could lift and carry without pain was a gallon of

8  milk.  AR at 313.  She estimated that she could walk "half a block to a block" without feeling the

9  need to stop, stand for less than 20 minutes, and sit for "30, 40 minutes" without needing to stand.

10  Id.  She reported that bending over, kneeling, stooping, or squatting caused pain.  Id. at 313-14.

11    Plaintiff's daughter Sandra Morales testified also.  She stated that she believed that Plaintiff

12  "has lots of problems" physically and mentally, and was like a child.  AR at 322.  Sandra Morales

13  testified,

14    I used to take care of her almost every day, making sure she was okay.  She was always
      weak.  She was always tired.  She couldn't get out of bed.  She wouldn't eat because she

15    was so tired and couldn't move.  So exhausted she could barely walk to the door. . . .

16  Id. at 323.  As a result, Sandra Morales believed Plaintiff could not work.  Id.

17    Vocational expert ("VE") Linda Ferra, testified.  The VE qualified Plaintiff's past work of

18  "farm worker" as "medium and unskilled" work. AR at 324.  The ALJ posed two hypothetical

19  questions to the VE.  In the first, the VE was asked to consider a person with a ninth grade education

20  and the past relevant work as a farm worker. AR at 324.  Further, the ALJ clarified,

21    This individual has a combination of severe impairments and retains a residual functional
      capacity to lift and carry 50 pounds occasionally and 25 pounds frequently.  This

22    individual retains the ability to stand, walk and sit six hours each…to perform simple,
      repetitive tasks, as well as maintain attention, concentration, persistence and pace…to

23    relate to and interact with others… can adapt to usual changes in work settings…[and]
      adhere to safety rules.

24

25  Id. at 324-25.  The VE concluded that the individual could perform Plaintiff's past work. Id. at 325.

26  In addition, the VE stated that the individual could perform other jobs existing in the national

27  economy.  Id.  Giving examples, the VE opined the individual could perform the "medium and

28

4

1    unskilled" occupations of industrial cleaner and hand packager, or the "light and unskilled"

2    occupation of laundry worker.  Id.

3         In the second hypothetical, the VE was asked to assume the individual had "the same

4    vocational parameters listed in the previous hypothetical," but also had a combination of severe

5    impairments.  AR at 325.  The person could lift and carry a maximum of eight pounds, stand for 20

6    minutes, sit for one hour total, and walk one-half to one block. Id. at 325-26.  The individual could

7    not concentrate for two-hour increments.  Id. at 326.  Given these limitations, the VE concluded the

8    person could neither perform Plaintiff's past work, nor other jobs in the national economy.  Id. at

9    326.

10        Next, Plaintiff's counsel, Geoffrey Hayden, posed a hypothetical question to the VE based

11   upon an individual with the RFC provided by Dr. Falizarta.  AR 326-27.  This person had poor

12   ability to understand, remember and carry out complex instructions.  Id.  She had a poor ability to

13   maintain concentration, attention, and persistence; and complete a normal workday and week

14   without interruption from psychologically-based symptoms.  Id. at 327.  The worker had a fair ability

15   to respond to changes in work settings; manage her own money (but may need an assignment payee

16   given a drug and alcohol history); and understand, remember and carry out simple instructions.  Id.

17   The worker would be able to sit two hours, stand one our, and walk for 30 minutes.  Id.  With these

18   restrictions, the VE concluded such an individual would not be able to work.  Id.

19        Relevant Medical Evidence

20        Beginning July 24, 2002 and continuing through December 13, 2002, Plaintiff received

21   treatment from the California Department of Corrections.  See AR 129; Pl.'s Memo at 5.  On July 7,

22   2002, a Brief Screening Report noted, "[T]here is not an indication that this offender is suffering

23   from a mental illness.  Referral to a mental health professional is not indicated."  AR at 152.  On

24   October 11, 2002, Plaintiff had a "crisis interview" after she reported that her mother died that

25   morning of cancer.  Id. at 141.  She had follow-up appointments on October 23, November 14, and

26   November 20, 2002.  Id. at 138-40.  During this period, Plaintiff began attending therapy in a "grief

27   and loss group," which she last attended on December 12, 2002.  Id. at 132-35.  At the last follow-up

28   appointment to the crisis visit, the writer noted Plaintiff was "much more animated, brighter, and

[had] better eye contact than at previous visits." Id. at 138. Also, Plaintiff's speech and thought

processes were within normal limits, and she left "appearing in no obvious acute psych distress." Id.

Dr. Kimball Hawkins saw Plaintiff for a psychological screening on December 26, 2003. AR

at 171. Dr. Hawkins noted that though Plaintiff was cooperative in the interview, she demonstrated a

sullen or angry mood, and seemed upset or argumentative easily. Id. at 172. Plaintiff's memory was

impaired and she performed "poorly on tasks requiring short-term memory skills." Id. For example,

Plaintiff was able to recall three words immediately, and one out of three after a delay. Id. at 173.

She subtracted seven from a hundred, but failed to remain focused and "could not subtract serial

sevens." Id. Plaintiff's results of the Folstein Mini Mental State Exam yielded a below-average

score. Id. Dr. Hawkins opined,

> Her ability to understand, remember, and carry out complex instructions is considered
> to be poor. Her ability to understand, remember, and carry out simple instructions is fair.
> Her ability to maintain concentration, attention, and persistence is poor. Her ability to
> perform activities within a schedule and maintain regular attendance is poor. Her ability
> to complete a normal workday and workweek without interruptions from psychologically
> based symptoms is poor. Her ability to respond appropriately to changes in the work
> setting is fair.

Id. Dr. Hawkins diagnosed Plaintiff with a mood disorder, not otherwise specified; insomnia,

polysubstance dependence, remission reported; and alcohol dependence, remission reported. Id.

On January 21, 2004, Dr. Emanuel Dozier saw Plaintiff for a comprehensive internal

medicine evaluation and he reviewed her record of Hepatitis C and depression. AR at 175. Plaintiff

informed Dr. Dozier that she had suffered migraine headaches for four years that occurred twice a

month with an intensity of 10 on a scale of 10. Id. 175-76. Dr. Dozier observed that Plaintiff was

able to sit during the interview without discomfort, and transfer on and off the examination table

without assistance. Id. at 176. Plaintiff's motor strength and grip strength were 5/5. Id. at 177. In

conclusion, Dr. Dozier's functional assessment was that Plaintiff "would be able to lift and carry

occasionally 50 pounds and frequently 25 pounds. She would be able to stand, walk and sit for six

hours." Id. Plaintiff had no postural, manipulation or environmental restrictions. Id.

Dr. Lavanya Bobba reviewed the record and offered a functional capacity assessment on

March 25, 2004. AR 192-99. Dr. Bobba noted Plaintiff complained of having migraines twice a

month. Id. at 193. Dr. Bobba determined that Plaintiff could lift and carry 50 pounds occasionally

1    and 25 pounds frequently; and Plaintiff could stand, walk or sit for 6 hours in an eight-hour workday.

2    Id.  Plaintiff had no further exertional limitations.  Id. at 194-96.

3         On March 20, 2004, psychiatrist Dr. Luyen Luu conducted a "mental residual functional

4    capacity assessment" in which she indicated Plaintiff was "not significantly limited" in the abilities

5    to: remember work-like procedures; maintain concentration for extended periods; work in close

6    proximity with others; and interact with the general public.  AR at 200-01.  Dr. Luu opined Plaintiff

7    "has the ability to understand, remember and carry out simple short step[s], but not complex nor

8    detailed instructions."  Id. at 202.  In a "psychiatric review technique" form, Dr. Luu indicated

9    Plaintiff had an affective disorder and a depressive syndrome characterized by pervasive loss of

10   interest in almost all activities, sleep disturbance, psychomotor agitation or retardation, decreased

11   energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking.  Id. at 208.

12        Dr. Franco Falizarta completed a physical capacities evaluation on January 5, 2005.  AR at

13   223.  He opined that in an eight-hour day, Plaintiff could sit for one hour at a time for a total of two

14   hours, stand for one hour, and walk thirty minutes.  Id. at 223-24.  In addition, Dr. Falizarta believed

15   Plaintiff was able to lift 10 pounds and carry 5 pounds occasionally.  Id. at 223.  He stated Plaintiff

16   was not able to bend, squat, crawl, or climb at all.  Id.  Dr. Falizarta stated Plaintiff suffered from

17   Hepatitis C, anemia, depression, and migraines.  Id.  Furthermore, the doctor opined Plaintiff was

18   disabled to this degree since January 22, 2004.  Id.

19        Dr. Sarupinder Bhangoo saw Plaintiff and conducted a comprehensive internal medicine

20   evaluation on June 7, 2007.  AR at 333.  Dr. Bhangoo observed that Plaintiff was able to climb up on

21   the examination table without difficulty and "[did] not seem to be in pain."  Id. at 334.  Plaintiff's

22   motor strength was "grade 5/5 with normal bulk and tone."  Id. at 336.  Plaintiff was diagnosed with

23   Hepatitis C, a psychosomatic disorder, and hypertension.  Id.  Dr. Bhangoo opined that Plaintiff

24   could lift and carry 100 pounds occasionally and 50 pounds frequently; and to sit, stand and walk for

25   eight hours in an eight-hour workday.  Id.  Further, Dr. Bhangoo observed that Plaintiff was "able to

26   bend from her back and neck without any limitations," and as such stated she did not have any

27   postural limitations on bending, stooping, or crouching.  Id.  Similarly, Plaintiff did not have any

28

7

1    manipulative limitations on reaching, handling, feeling, or grasping.  Id. at 337.  Finally, Dr.

2    Bhangoo stated, "her maximum functional capacity is ... heavy with no specific limitations."  Id.

3          On June 15, 2007, Dr. James McNairn conducted a comprehensive psychiatric evaluation on

4    Plaintiff, who stated she had a "major depressive disorder, bipolar, agoraphobia, posttraumatic stress

5    disorder and dual personality."  AR at 338.  Plaintiff informed the doctor that she had a history of

6    drug abuse and suicide attempts.[2]  Id. at 338-39.  During the mental status examination, Plaintiff's

7    "psychomotor activity was slowed," and her "stream of thought was generally organized and logical

8    though somewhat slowed at times."  Id. at 341.  Plaintiff reported auditory hallucinations and

9    explained that she developed a personality named "Becky" to survive the abuse she suffered as a

10   child.  Id. at 341-42.  Objective tests regarding attention and concentration revealed Plaintiff "was

11   able to follow simple and short instructions."  Id. at 342.  Dr. McNairn opined Plaintiff was mildly

12   impaired in her ability to: understand and remember either simple or detailed instructions; maintain

13   attention and concentration; perform activities on a schedule; interact appropriately with co-workers

14   without distracting them; and accept instructions or respond to criticisms from a supervisor.  Id. at

15   344.  Plaintiff was moderately impaired with the ability to: "complete a normal workday and

16   workweek without interruption from psychologically based symptoms and perform at consistent pace

17   without unreasonable rest periods" and to interact appropriately with the public.  Id.  Notably, Dr.

18   McNairn observed twice that "the claimant was eager to claim mental illness" and appeared to be

19   exaggerating symptoms.  Id. at 341, 343.  Dr. McNairn diagnosed Plaintiff with polysubstance

20   dependence in sustained remission; anti-social behavior; malingering mood disorder, not otherwise

21   specified; self-reported high blood pressure, Hepatitis C, and chronic back pain.  Id. at 343.  Dr.

22   McNair gave Plaintiff a global functioning assessment ("GAF") score of 65.

23         Dr. Robert Paxton completed a "psychiatric review technique" form on September 13, 2007.

24   AR at 348.  In this, he opined Plaintiff had impairments that were not severe, including affective,

25

26         [2] The Court notes Plaintiff's statements to Dr. McNairn were inconsistent with her testimony in that Plaintiff stated
     at the hearing she only attempted suicide once and could only recall working in the agricultural fields.  See AR 308, 317.

27   However, Plaintiff specifically cited three instances of suicide attempts to Dr. McNairn: an attempt to run her car off a cliff
     at the age of 22, an alcohol overdose in the 1990s, and a drug overdose in 2000.  Id. at 338-39.  Further, Plaintiff told Dr.

28   McNairn that she worked as a clerk, receptionist, cashier, welder's assistant and in the oil fields, beyond her work in the
     agricultural fields.  Id. at 340.

1   personality substance addiction additions.  Id.  Dr. Paxon offered no further observations on the

2   check-list form, and did not provide any support for these conclusions.  See id. at 348-58.

3          On July 21, 2008, Dr. Farah Khan completed a "psychiatric/medication evaluation" on

4   Plaintiff, in which she reconstructed Plaintiff's psychiatric, family, medical, social, and substance

5   abuse histories.  AR at 294-95.  The information in these histories was based solely upon information

6   gathered from Plaintiff and Plaintiff's subjective complaints.  See id.  Upon mental status

7   examination, Dr. Khan opined Plaintiff "was alert and oriented" though "quite guarded."  Id. at 296.

8   Dr. Khan diagnosed Plaintiff with schizoaffective disorder, bipolar type; panic disorder with

9   agoraphobia; chronic posttraumatic stress disorder; polysubstance dependence, with physiological

10  dependence, in sustained full remission; Hepatitis C; hypertension; and hypercholesterolemia.  Id.

11  Dr. Khan gave Plaintiff a GAF score of 35.  Id.  In subsequent treatment notes through September

12  2009, presented in checklist form, Dr. Khan noted Plaintiff seemed depressed and anxious, with fair

13  insight and memory.  Id. at 299-302.

14         ALJ Findings

15         As a preliminary matter, the ALJ determined that the applications dated August 11, 2003 (in

16  which Plaintiff alleged disability since December 1, 1997), and March 31, 2007 (in which Plaintiff

17  alleged disability beginning January 1, 2000) were duplicates.  AR at 250.  Therefore, the ALJ

18  consolidated the actions.  Id.

19         Following this determination, the ALJ evaluated Plaintiff with the customary five-step

20  evaluation process.  The ALJ established first that Plaintiff had not engaged in substantial gainful

21  activity since her application date of August 11, 2003.  AR at 252.  Second, the ALJ found Plaintiff

22  had the following severe impairments: chronic liver disease and a depressive disorder.  Id.  Next, the

23  ALJ found that neither an impairment nor combination of the impairments met or equaled one of the

24  listed impairments because Plaintiff had "mild restriction of activities of daily living; moderate

25  difficulties in maintaining social functioning; mild difficulties in maintaining concentration,

26  persistence, or pace; and one or two episodes of decompensation.  Id. at 252-53.  Further, the ALJ

27  noted:

28

1
2
3
4

> The claimant has failed to provide objective medical evidence establishing she has a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to chasse the individual to decompensate or a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

5   Id. at 253.  At the fourth step, the ALJ determined Plaintiff had the residual functional capacity

6   ("RFC") to lift and carry 50 pounds occasionally and 25 pounds frequently; and to sit, stand and/or

7   walk for six hours each in an eight-hour workday.  Id.  Plaintiff could perform simple repetitive

8   tasks; relate to and interact with others; maintain attention, concentration, persistence, and pace;

9   adapt to usual changes in work settings; and adhere to safety rules.  Id.

10       Based upon these findings, the medical record, and the testimony of a vocational expert, the

11   ALJ found Plaintiff could perform her past relevant work as an agricultural laborer, which was

12   classified as "unskilled medium work."  AR at 257.  In addition, Plaintiff could perform work that

13   exist in significant numbers in the national economy, such as industrial cleaner, hand packager, and

14   laundry worker.  Id. at 258.  Subsequently, the ALJ determined that Plaintiff was not disabled as

15   defined by the Social Security Act since her application date.  Id.

16                              **STANDARD OF REVIEW**

17       District courts have a limited scope of judicial review for disability claims after a decision by

18   the Commissioner of Social Security to deny benefits under the Act.  When reviewing findings of

19   fact, the Court must determine whether the Commissioner's decision is supported by substantial

20   evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant

21   is not disabled must be upheld by the Court if the proper legal standards were applied and the

22   findings are supported by substantial evidence.  See Sanchez v. Sec'y of Health & Human Serv., 812

23   F.2d 509, 510 (9th Cir. 1987).

24       Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

25   reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S.

26   289, 401 (1971), quoting Consol. Edison Co. v. NLRB, 305 U.S. 197 (1938).  The record as a whole

27   must be considered, as "[t]he court must consider both evidence that supports and evidence that

28   detracts from the ALJ's conclusion."  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

**REVIEW**

In order to qualify for benefits under Title XVI of the Social Security Act, Plaintiff must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if,

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on the claimant to establish disability. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990). Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. Maounis v. Heckler, 738 F.2d 1032, 1034 (9th Cir. 1984).

To achieve uniform decisions, the Commissioner established regulations that include the five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520(a)-(f), 416,920(a)-(f) (1994). As noted, applying that process, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since August 11, 2003; (2) had medically determinable severe impairments (chronic liver disease and a depressive disorder); (3) did not have an impairment or combination of impairments that met or equaled one of the listed impairments set forth in 20 C.F.R.§ 404, Subpart P, Appendix 1; (4) had past relevant work to which she could return; and (5) had the ability to perform other work at the state and national level in significant numbers. AR at 253-58. The ALJ then determined Plaintiff was not "disabled" as defined in the Act above since her application date. Id. at 258.

**DISCUSSION**

Plaintiff "does not dispute the ALJ's recitation of the medical record with respect to the severity of her physical condition" or "the ALJ's assessment that she can perform the exertional requirements of medium work." Pl.'s Memo. at 9. However, Plaintiff contends that the RFC

1    determination that Plaintiff could perform "simple tasks, relate to and interact with others, maintain

2    attention, concentration, persistence, and pace, adapt to usual changes in work setting and adhere to

3    safety rules...lacks the requisite support of substantial evidence and is a result of legal error.

4    [citation] Specifically, the ALJ impermissibly dismissed Dr. McNairn's examining opinion." Id. at

5    12; quoting AR at 253 (internal citation and quotation marks omitted).  Though Plaintiff

6    acknowledges that the ALJ *stated* he gave substantial weight to Dr. McNairn's opinion, Plaintiff

7    asserts that the ALJ improperly rejected Dr. McNairn's opinion:

8    　　　[N]owhere did the ALJ discuss Dr. McNairn's opinion that Juanita Morales' "ability to
　　　complete a normal workday and workweek without interruption from psychologically
9    　　　based symptoms and perform at consistent pace without unreasonable rest periods is
　　　moderately impaired.  In addition, the ALJ casts aside Dr. McNairn's opinion that Ms.
10   　　　Morales was moderately limited in dealing with the public and conflates it with the
　　　ability to respond to coworkers and peers.  The ability to deal with the public is a
11   　　　limitation separate and apart from the ability to relate to coworkers and peers.

12   Pl.'s Memo. at 15.  However, for the following reasons, the Court disagrees and finds that Plaintiff's

13   argument is without merit.

14   　　　As Plaintiff admits, the ALJ stated, "Dr. McNairn's opinion on functional capacity was given

15   substantial weight." AR at 257.  The ALJ incorporated Dr. McNairn's opinion in his findings

16   regarding Plaintiff's degree of limitation, in which the ALJ stated Plaintiff had "mild restriction of

17   activities of daily living; moderate difficulties in maintaining social functioning; [and] mild

18   difficulties in maintaining concentration, persistence or pace." Id. at 253.  The ALJ noted that "the

19   claimant told Dr. McNairn that she performed all household tasks in the recovery home in which she

20   resides including laundry, sweeping, mopping, vacuuming, yard work and cooking." Id. at 257.

21   Considering Plaintiff's activities of daily living was proper to determine her limitations.  See Stubbs-

22   Danielson v. Astrue, 539 F.3d 1169, 1156 (9th Cir. 2008) (the ALJ properly considered claimant's

23   activities including house cleaning, cooking, and doing laundry as the "activities tend to suggest the

24   claimant may still be capable of performing the basic demands of competitive, remunerative,

25   unskilled work on a sustained basis").

26   　　　Further, the ALJ concluded that Plaintiff had "moderate difficulties in maintaining social

27   functioning" AR at 253.  Similarly, and as noted by the ALJ, Dr. McNairn opined that Plaintiff was

28   "moderately impaired" in her ability to interact with the public and "mildly impaired" in her ability

1  to interact appropriately with co-workers and peers.  Id. at 257, 344.  Plaintiff asserts that the ALJ

2  merged the ability "in dealing with the public and conflates it with the ability to respond to

3  coworkers and peers" in his recitation of Dr. McNairn's findings.  Pl.'s Memo. at 15.  However, the

4  ALJ did not conflate these abilities, rather, he contrasted them.  If the ALJ had made only an

5  observation regarding "social functioning," this allegation of conflation may be true, but the ALJ

6  clearly recognized two distinct abilities in his observation that "*although* the claimant's ability to

7  interact with the public is moderately limited, she is able to interact appropriately with coworkers

8  and peers."  AR at 257 (emphasis added).  Moreover, the ALJ determined Plaintiff had the ability to

9  return to her past relevant, unskilled work of an agricultural laborer, which requires little interaction

10  with the public.  See AR at 257.

11       The Ninth Circuit held, "An ALJ's assessment of a claimant adequately captures restrictions

12  related to concentration, persistence, or pace where the assessment is consistent with restrictions

13  identified in the medical testimony."  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir.

14  2008).  The ALJ's conclusion that the Plaintiff had "difficulties in maintaining concentration,

15  persistence, or pace" comes directly from Dr. McNairn's opinion.  AR 253, see id. at 344.  The ALJ

16  noted, "Dr. McNairn reported that the claimant demonstrated intact recent memory, and maintained

17  concentration throughout the evaluation."  Id. at 256.  Specifically, Dr. McNairn opined, "The

18  claimant's ability to maintain attention and concentration is mildly impaired...[and] the claimant's

19  ability to...perform at a consistent pace without unreasonable rest periods is moderately impaired."

20  Id. at 344.  Plaintiff's deficiencies in maintaining concentration, persistence, or pace were adequately

21  incorporated into the RFC by the ALJ when he limited Plaintiff to simple, repetitive tasks.  See, e.g.,

22  Sabin v. Astrue, 337 F.App'x. 617, 621 (9th Cir. 2009) ("The ALJ determined the end result of [the

23  plaintiff's] moderate difficulties as to concentration, persistence, or pace was that she could do

24  simple and repetitive tasks on a consistent basis"); Howard v. Massanari, 255 F.3d 577, 582 (8th Cir.

25  2001) (limitation to "simple, repetitive, routine tasks" captured deficiencies in concentration,

26  persistence, and pace).

27       Therefore, clearly, the ALJ incorporated Dr. McNairn's concerns into the Plaintiff's degrees

28  of limitations and did not reject his opinion.  The ALJ accounted for Plaintiff's mental impairment

13

by limiting her to simple, repetitive tasks.  Despite this, the Court finds that even if the ALJ should have more specifically addressed Plaintiff's moderate limitation in her "ability to complete a normal workday and workweek without interruption from psychologically based symptoms and perform at consistent pace without unreasonable rest periods," his failure to do so was harmless given that the limitation of "simple, repetitive tasks" incorporates Plaintiff's deficiencies into the RFC.  See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006); Batson v. Comm'r of the Soc. Sec. Admin, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding error harmless where it did not negate the validity of the ALJ's ultimate conclusion).

## CONCLUSION

For all these reasons, the Court concludes that the ALJ did not reject the opinion of Dr. McNairn.  In addition, the ALJ accommodated Plaintiff's mild to moderate mental deficiencies into the promulgated RFC.

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of Court IS DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff Juanita Morales.

IT IS SO ORDERED.

Dated:   **October 1, 2010**                                         **/s/ Jennifer L. Thurston**
                                                                              UNITED STATES MAGISTRATE JUDGE

14